IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| NORA CRISTINA VÁZQUEZ-RIVERA and HÉCTOR LUIS ORTIZ-VÁZQUEZ,<br><br>    Plaintiffs<br><br>         v.<br><br>HOSPITAL EPISCOPAL SAN LUCAS, INC., et al.,<br><br>    Defendants | CIVIL NO. 08-2223 (JP) |

**OPINION AND ORDER**

Before the Court is a motion to dismiss (No. 17) filed by Defendant Hospital Episcopal San Lucas ("the Hospital"). Plaintiffs did not timely oppose this motion.[1] Also before the Court is a motion to dismiss Plaintiffs' supplemental claims (No. 23) filed by Defendant Luis A. Acosta-García, M.D. ("Acosta"), which was not opposed by Plaintiffs.

Plaintiffs filed the instant lawsuit pursuant to the Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, and Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, §§ 5141 and 5142, alleging that Defendants Hospital San Lucas, Acosta, and Dr. Maryrose Concepción-Girón ("Concepción"), failed to examine, stabilize and

---

1. After allowing Plaintiffs one extension of time for their opposition, the Court denied Plaintiffs' second motion for an extension of time (No. 27).

CIVIL NO. 08-2223 (JP)        -2-

treat Plaintiff Nora Vázquez-Rivera's ("Vázquez") condition, thereby causing her to miscarry her pregnancy and later to suffer infertility.

Defendants Hospital San Lucas and Acosta move to dismiss the complaint, arguing that Plaintiffs lack a viable claim under EMTALA, and that the supplemental medical malpractice claims should be dismissed for lack of jurisdiction. For the reasons stated herein, Defendants' motions to dismiss the complaint (**Nos. 17 and 23**) are hereby **GRANTED**.

I. **FACTUAL ALLEGATIONS**

On Friday, October 27, 2006, at 6:59 a.m., Plaintiff Vázquez went to the emergency room of the Hospital seeking emergency medical attention. Plaintiff, who was sixteen weeks pregnant at the time, complained that she was experiencing vaginal bleeding and severe abdominal pain. A nurse took Plaintiff's vital signs as well as urine and blood samples. A sonogram was also performed by a sonogram technician, who informed Plaintiff that "the baby looked fine." Compl. ¶ 4.2. No further diagnostic tests or examinations were performed to determine the cause of the bleeding, nor was any attempt made to stop the bleeding. Plaintiff alleges that she was inadequately screened by the Hospital.

Plaintiff Vázquez further alleges that although the Hospital's emergency room staff classified her complaints as constituting an

CIVIL NO. 08-2223 (JP)           -3-

emergency medical condition, she was left unattended for several hours without receiving any further treatment. In addition, Plaintiffs allege that Vázquez was not offered and did not receive any medical attention to stabilize her emergency medical condition.

At approximately 5:00 p.m. on that same day, as Plaintiff Vázquez was still bleeding and suffering from severe abdominal pain, a nurse informed her that she would be admitted to the maternity ward under the care of her regular obstetrician, Defendant Concepción. Plaintiff alleges that she was never evaluated by Defendant Concepción. Defendant Concepción informed Plaintiff, on the evening of October 27, 2006, that she was being admitted to the Hospital to determine the cause of her bleeding. Defendant Concepción further told Plaintiff that she would not be available to treat her and that Plaintiff would be under the care of Defendant Acosta.

Plaintiff was brought to a room in the maternity ward and left unattended until the next morning. In the early morning hours of October 28, 2006, Plaintiff suffered a miscarriage. She was treated only by the nursing staff and was not examined by a physician until 6:00 p.m. that evening, at which time Defendant Acosta informed her that her condition would require a curettage, a surgical procedure to remove the remains of the placenta from her uterus.

This procedure was performed the following day, October 29, 2006, and Plaintiff was discharged from the Hospital a few hours

CIVIL NO. 08-2223 (JP)           -4-

after undergoing the surgery.  Plaintiff alleges that Defendant Acosta was negligent in performing the curettage given his failure to perform the proper ex-ante radiological tests to identify the amount and location of the tissue to be removed.

In the days following the curettage, Plaintiff noticed a strong odor coming from her body that worsened over time.  Plaintiff also began to feel ill.  She saw an identified gynecologist, who is not a party to the lawsuit, who performed a pelvic exam and determined that the initial curettage had not removed all the placental and fetal remains from Plaintiff's uterus.  Plaintiff had to undergo another curettage.  Plaintiff has since acquired a serious and chronic infection and has undergone several life-threatening surgeries that have rendered her sterile.

Plaintiffs allege that as a result of the Defendants' negligent acts and omissions, they have suffered and will continue to suffer the loss of their unborn child, mental anguish, physical suffering, and the loss of their ability to procreate.

## II. **LEGAL STANDARD FOR A MOTION TO DISMISS**

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).  As such, in order to survive a motion to dismiss, a complaint must state a claim to relief

CIVIL NO. 08-2223 (JP)          -5-

that is plausible on its face, not merely conceivable. Id. at 1974. The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct. at 1969. Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff." Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 997 (1st Cir. 1992).

## III. **ANALYSIS**

The Hospital argues that Plaintiffs have failed to state an EMTALA claim upon which relief can be granted. Defendant Acosta moves the Court to dismiss Plaintiffs' supplemental claims. The Court will now consider Defendants' arguments in turn.

### A.   **Plaintiffs' EMTALA Claims**

Congress passed EMTALA as "anti-dumping" legislation in response to an increased number of complaints that hospitals were refusing to treat patients that lacked medical insurance. Correa v. Hospital San Francisco, 69 F.3d 1184, 1189 (1st Cir. 1995). EMTALA was not intended to be a federal medical malpractice statute, but rather a

CIVIL NO. 08-2223 (JP)           -6-

federal law that provided a remedy for emergency care patients where state malpractice provisions fell short.  Correa, 69 F.3d at 1192; see Reynolds v. Maine Gen. Health, 218 F.3d 78, 83 (1st Cir. 2000). EMTALA requires that participating hospitals with emergency rooms provide: (1) an appropriate medical screening examination within the capability of the hospital's emergency department; and (2) that if a patient is determined to be suffering from an emergency medical condition, the hospital must render stabilizing care before discharging or transferring the patient to another medical facility. 42 U.S.C. § 1395dd(a) and § 1395dd(b)(1).

A plaintiff can bring a cause of action under either the screening or stabilization provisions of EMTALA, or both. See Benítez-Rodríguez v. Hosp. Pavía Hato Rey, Inc., 588 F. Supp. 2d 210, 214 (D.P.R. 2008). The United States Court of Appeals for the First Circuit has outlined a three-pronged standard to establish an EMTALA violation. Correa, 69 F.3d at 1190. In order to prevail on an EMTALA claim, a plaintiff must show that (1) the hospital is a participating hospital, covered by EMTALA, that operates an emergency department; (2) the plaintiff arrived at the facility seeking treatment; and (3) the hospital either (a) did not afford the patient an appropriate screening in order to determine if she had an emergency medical condition, or (b) bade farewell to the patient (whether by turning her away, discharging her, or improvidently

CIVIL NO. 08-2223 (JP)          -7-

transferring her) without first stabilizing the emergency medical condition.   Id. (citing Miller v. Med Ctr. Of S.W. La., 22 F.3d 626, 628 (5th Cir. 1994); Stevison v. Enid Health Sys., Inc., 920 F.2d 710, 712 (10th Cir. 1990)).

The parties hereto do not contest the first two requirements. That is, Plaintiff Vázquez arrived at the emergency room of the Hospital, a participating EMTALA facility, seeking medical care. Plaintiffs' claims turn on the third prong: whether the hospital failed to provide appropriate screening and whether there was a duty to stabilize under the statute.

### 1.   Screening

Plaintiffs allege that the Hospital's screening procedure was inadequate. Although EMTALA does not define what appropriate medical screening entails, the case law has defined this duty as providing an examination "reasonably calculated to identify critical medical conditions that may be afflicting symptomatic patients and provides that level of screening uniformly to all those who present substantially similar complaints." Correa, 69 F.3d at 1192; see Guadalupe v. Negrón-Agosto, 299 F.3d 15, 20 (1st Cir. 2002).

A plaintiff must show that the screening that he or she received failed to comply with the standard screening policy that the hospital "regularly follows for other patients presenting substantially similar conditions." Malavé Sastre v. Hospital Doctor's Ctr.,

CIVIL NO. 08-2223 (JP)          -8-

93 F. Supp. 2d 105, 109-10 (D.P.R. 2000) (Pieras, J.) (noting that "an 'appropriate' screening is properly determined not by reference to particular outcomes, but instead by reference to a hospital's standard screening procedures"); see Correa, 69 F.3d at 1192 ("[t]he essence of this requirement is that there be some screening, and that it be administered evenhandedly.").

In the instant case, Plaintiffs allege that the Hospital's screening was inadequate in that no additional diagnostic tests or examinations were performed outside of the initial evaluation, which included the taking of vital signs, urine and blood samples, and a sonogram.  Plaintiffs further allege that no attempt was made by the Hospital to identify the cause of Plaintiff Vázquez's bleeding. Plaintiffs, however, do not claim to satisfy either one of the two scenarios that would allow them to survive a motion to dismiss on the screening requirement: they do not allege that the Hospital refused to screen Plaintiff Vázquez or that the screening that the Hospital provided to Plaintiff was inconsistent with regular screening procedures for similarly-situated patients.  See Correa, 69 F.3d at 1192-93.  Although Plaintiffs may allege a faulty screening process, "EMTALA does not create a cause of action for medical malpractice . . . [and] faulty screening . . . does not contravene the statute."  Id.  Even considering the facts in the light most favorable to the Plaintiffs, the Court finds that Plaintiffs have

CIVIL NO. 08-2223 (JP)        -9-

failed to state a claim under EMTALA's screening provision upon which relief can be granted.

### 2. Stabilization

The Court next turns to the Hospital's argument that Plaintiffs have failed to allege a stabilization violation under EMTALA. EMTALA requires all participating hospitals to screen patients that present themselves to the emergency room; however, the duty to stabilize is only triggered when it has been determined that the patient is suffering from an emergency medical condition. See 42 U.S.C. § 1395dd(b). The statute states as follows, in relevant part:

> An emergency medical condition is defined by the statute as a "medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) such that the absence of immediate medical attention could reasonably be expected to result in (a) placing the health of the individual (or, with respect to a pregnant woman, the health of the woman or her unborn child) in serious jeopardy; (b) serious impairment to bodily functions; or (c) serious dysfunction of any bodily organ or part . . ."

42 U.S.C. § 1395dd(e)(1)(A). The burden is on the plaintiff to prove that the hospital had actual knowledge that he or she was suffering from an emergency medical condition. See Torres Otero v. Hospital General Menonita, 115 F. Supp. 2d 253, 259 (D.P.R. 2000) (Pieras, J.).

The instant complaint states that Plaintiff Vázquez, upon entering the emergency room of the Hospital, "complained of signs and symptoms that clearly indicated a medical emergency, [including]

CIVIL NO. 08-2223 (JP)        -10-

pregnancy, vaginal bleeding, and severe abdominal pain." Compl. ¶ 4.1. Plaintiffs also allege that the Hospital's emergency room staff identified Plaintiff's signs and symptoms as an emergency medical condition. Therefore, Plaintiffs' allegations satisfy the emergency medical condition element of EMTALA's stabilization requirement.

Once it has been determined that the patient is suffering from an emergency medical condition, EMTALA defines the duty to stabilize as the duty "to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability, that no material deterioration of the condition is likely to result from or occur during the transfer of the individual from a facility . . . [or in discharging the patient]." 42 U.S.C. § 1395dd(e)(3)(A). In addition, a hospital fulfills its statutory duties under EMTALA once it admits the patient. See Benítez-Rodríguez, 588 F. Supp. 2d 215 (citing 42 C.F.R. § 489.24(a)(ii)) (stating that the "EMTALA stabilization requirement [is discontinued] in the case [where the plaintiff is] admitted as a patient, and thus, never dumped, transferred, or discharged").

Plaintiff Vázquez alleges that she was left unattended for long periods of time and that she did not receive any medical attention or treatment to stabilize her emergency medical condition for over twenty-four hours after she first arrived at the Hospital's emergency

CIVIL NO. 08-2223 (JP)          -11-

room. Thus, Plaintiffs' claims under the EMTALA stabilization provision mainly turn on the alleged delay in providing stabilizing treatment to Plaintiff Vázquez. Once Plaintiff was admitted as an inpatient for further treatment, the Hospital's obligation under EMTALA ended. Hence, Plaintiffs are alleging that the Hospital failed to stabilize Plaintiff Vázquez from the time it was determined that she was suffering from an emergency medical condition until the point at which she was admitted to the maternity ward.

Although Correa suggests that a hospital's delay in providing screening could be "so egregious and lacking in justification as to amount to an effective denial of a screening examination", the case law does not support the same for the *stabilization* provision. 69 F.3d at 1193 (emphasis added); see, e.g., Torres Otero, 115 F. Supp. 2d at 260 (holding that an allegation that the stabilization treatment provided was incorrect or delayed did not demonstrate that the defendant hospital violated its statutory duty to stabilize before transfer or discharge). Moreover, "EMTALA expressly defines the nature of the duty to stabilize in terms of the transfer or discharge of a patient." Torres Otero, 115 F. Supp. 2d at 260.

In the case at bar, Plaintiff Vázquez was neither transferred nor discharged from the Hospital during the period of time during which the Plaintiffs allege an EMTALA violation. Rather, Plaintiff

CIVIL NO. 08-2223 (JP)          -12-

was admitted, however belatedly, to the maternity ward, thereby terminating the Hospital's potential liability under EMTALA. Although the First Circuit has not specifically addressed this issue, a decision from the United States Court of Appeals for the Eleventh Circuit provides strong persuasive authority for the assertion that there is no duty imposed on participating hospitals by EMTALA's stabilization requirement to provide treatment to individuals outside of the context of a transfer or discharge.  See Harry v. Marchant, 291 F.3d 767 (11th Cir. 2002) (holding that there was no duty under EMTALA to provide stabilizing care to a patient with an emergency medical condition who was not being transferred).  Therefore, having found that Plaintiffs failed to allege a stabilization violation under EMTALA, the Court grants Defendants' motion to dismiss Plaintiffs' EMTALA claims and will enter a separate judgment accordingly.

### B.  Plaintiffs' Puerto Rico Law Claims

Plaintiffs also filed supplemental claims pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code.  Having dismissed the EMTALA claims – the only federal claims in the instant lawsuit –  the Court declines to exercise its supplemental jurisdiction over the state law claims.  The Court will enter judgment dismissing Plaintiffs' supplemental state law claims without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

CIVIL NO. 08-2223 (JP)            -13-

**IV.   CONCLUSION**

In conclusion, the Court **GRANTS** Defendants' motions to dismiss. The Court will enter a separate judgment dismissing Plaintiffs' EMTALA claims with prejudice and Plaintiffs' Puerto Rico law claims without prejudice.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of May, 2009.

                                                s/Jaime Pieras, Jr.
                                                JAIME PIERAS, JR.
                                         U.S. SENIOR DISTRICT JUDGE